# EXHIBIT
# 2

# EXHIBIT
# 2

1

2

3

4

5

6  GORDON SILVER                          SMITH, GAMBRELL & RUSSELL, LLP
   GERALD M. GORDON, ESQ.                 BRIAN P. HALL, ESQ.
7  Nevada Bar No. 229                     (*pro hac vice pending*)
   E-mail:  ggordon@gordonsilver.com      Georgia Bar No. 318171
8  BRIAN R. IRVINE, ESQ.                  E-mail:  bhall@sgrlaw.com
   Nevada Bar No. 7758                    NICHOLAS J. ROECKER, ESQ.
9  E-mail:  birvine@gordonsilver.com      (*pro hac vice pending*)
   GABRIELLE A. HAMM, ESQ.                Georgia Bar No. 211708
10 Nevada Bar No. 11588                   E-Mail: nroecker@sgrlaw.com
   E-mail:  ghamm@gordonsilver.com        Promenade II, Suite 3100
11 100 West Liberty Street, Ste. 940      1230 Peachtree Street, N.E.
   Reno, Nevada 89501                     Atlanta, Georgia 30309
12 Telephone (775) 343-7500               Telephone (404) 815-3500
   Facsimile (775) 786-0131               Facsimile (404) 815-3509
13

14 *Proposed Counsel to the Debtors and Debtors-in-Possession*

15                    **UNITED STATES BANKRUPTCY COURT**
16                    **FOR THE DISTRICT OF NEVADA**

17 In re:                                 | Case No.: 13-51562
                                          | Chapter  11
18 GLOBAL AXCESS CORP., a Nevada corporation,
                                          | Pending joint administration with:
19   ☐  Affects this Debtor.
                                          | 13-51563    Nationwide Money Services, Inc.
20   ☒  Affects all Debtors.              | 13-51564    Nationwide Ntertainment Services, Inc.
                                          | 13-51565    EFT Integration, Inc.
21   ☐  Affects NATIONWIDE MONEY SERVICES,
        INC., a Nevada corporation.
22
     ☐  Affects NATIONWIDE NTERTAINMENT
23      SERVICES, INC., a Nevada corporation.

24   ☐  Affects EFT INTEGRATION, INC., a Florida
        corporation.                      | Date:
25                                         | Time:

26      **ORDER AUTHORIZING DEBTORS TO:  (A) USE CASH COLLATERAL ON AN**
27 **EMERGENCY BASIS PENDING A FINAL HEARING; (B) INCUR POSTPETITION**
   **DEBT ON AN EMERGENCY BASIS PENDING A FINAL HEARING; AND (C) GRANT**
28 **ADEQUATE PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO**

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

**FIFTH THIRD BANK AND FIFTH THIRD EQUIPMENT FINANCE COMPANY**

This matter came before this Court on the motion [ECF No. ___] (the "Motion") of Global Axcess Corp., *et al.* (the "Debtors")[1] requesting that this Court enter an order authorizing Debtors to: (a) use certain Cash Collateral on an emergency basis pending a Final Hearing; (b) incur Postpetition Debt on an emergency basis pending a Final Hearing; and (c) grant adequate protection and provide security and other relief to Fifth Third Bank in its capacity as the lender ("Prepetition Lender") party to the Prepetition Credit Agreements, Fifth Third Equipment Finance Company in its capacity as the lessor ("Prepetition Lessor") party to the Prepetition Lease Agreements, and Fifth Third Bank in its capacity as the lender ("Postpetition Lender") party to Postpetition Credit Agreement. Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A attached hereto and by this reference made a part hereof.

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of the Filing Date.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having completed a hearing pursuant to Code §§ 363 and 364 and Fed. R. Bankr. P. 4001(b) and (c), and objections, if any, having been withdrawn, resolved or overruled by the Court, **THE MOTION IS GRANTED, AND THE COURT HEREBY FINDS THAT:**

A.    On the Filing Date, Debtors filed voluntary petitions for relief under chapter 11 of the Code. Debtors have retained possession of their property and continue to operate their businesses as debtors in possession pursuant to Code §§ 1107 and 1108.

B.    The Court has jurisdiction over the Cases and this proceeding pursuant to 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

---

[1] The Debtors are the following entities: Global Axcess Corp., a Nevada corporation, Nationwide Money Services Inc., a Nevada corporation, Nationwide Ntertainment Services, Inc., a Nevada corporation, and EFT Integration, Inc., a Florida corporation.

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

2

C.  No Committee has been appointed in these Cases.

D.  Subject to Paragraph 9 of this Order, Debtors admit, stipulate and agree that:

1.  the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship among Debtors and the Prepetition Lender and Prepetition Lessor, respectively;

2.  the Prepetition Debt constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Documents;

3.  as of the Filing Date, Debtors are liable for payment of the Prepetition Debt, and the Prepetition Debt shall be an allowed claim in an amount not less than $14,757,771.75, exclusive of accrued and accruing Allowable 506(b) Amounts;

4.  no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under the Code, under applicable non-bankruptcy law or otherwise;

5.  the Prepetition Liens are Priority Liens, subject to Permitted Priority Liens and secure payment of all of the Prepetition Debt;

6.  upon the entry of this Order, for purposes of Code §§ 506(c) and 507(b) and Fed. R. Bankr. P. 3012, as of the Filing Date, the value of the Prepetition Financing Group's interest in the Prepetition Collateral was not less than $10,000,000; provided, however, that nothing herein shall prejudice either of Prepetition Lender's or Prepetition Lessor's right to later:  (1) assert that their respective interests in the Prepetition Collateral lack adequate protection; and (2) seek a higher valuation of the Prepetition Collateral;

7.  Debtors do not have, and hereby release, and are forever barred from bringing any claims, counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Documents, the Prepetition Liens, the Prepetition Debt or

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

3

1    otherwise, against the Prepetition Lender, the Prepetition Lessor and their respective

2    affiliates, subsidiaries, agents, officers, directors, employees, advisors, consultants,

3    predecessors in interest, successors and assigns.

4         E.     Prepetition Financing Group has consented to the terms of this Order and are

5    entitled to adequate protection as set forth herein pursuant to Code §§ 361, 362, 363 and 364

6    from any decrease in the value of their interests in the Prepetition Collateral from and after the

7    Filing Date.

8         F.     Debtors need to use Cash Collateral and incur Postpetition Debt as provided

9    herein through the conclusion of the Final Hearing, in order to prevent immediate and irreparable

10   harm to the estate and minimize disruption to and avoid the termination of their business

11   operations. Entry of this Order will also enhance the possibility of maximizing the value of the

12   Debtors' businesses.

13        G.     Debtors are unable to obtain unsecured credit allowable under Code § 503(b)(1)

14   sufficient to finance the operations of their businesses. Except as provided below, Debtors are

15   unable to obtain credit allowable under Code §§ 364(c)(1), (c)(2) or (c)(3) on terms more

16   favorable than those offered by Postpetition Lender.

17        H.     The terms of the Postpetition Debt have been negotiated at arm's length, and the

18   Postpetition Debt is being extended in good faith, as that term is used in Code § 364(e).

19        I.     The terms and conditions of the Postpetition Documents are fair and reasonable,

20   the best available to Debtors under the circumstances, reflect the Debtors' exercise of prudent

21   business judgment consistent with their fiduciary duties, and are supported by reasonably

22   equivalent value and consideration.

23        J.     Under the circumstances of these Cases, this Order is a fair and reasonable

24   response to Debtors' request for the consent of the Prepetition Financing Group and Postpetition

25   Lender to the use of Cash Collateral and Postpetition Lender's provision of Postpetition Debt,

26   and the entry of this Order is in the best interest of Debtors' estates and their creditors.

27        K.     The notice provided by Debtors of the Motion, the hearing on the Motion, and the

28   entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (c) and 9014

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

and Code §§ 102(1), 363, 364(c) and (d) and were otherwise sufficient and appropriate under the circumstances.

**AND THE COURT HEREBY ORDERS THAT:**

1.    <u>Authorization to Use Cash Collateral</u>.    Debtors are authorized to use Cash Collateral solely in accordance with the terms and provisions of this Order, including, without limitation, Paragraph 2(c) below.

2.    <u>Procedure for Use of Cash Collateral</u>.

(a)    <u>Delivery of Cash Collateral to Postpetition Lender</u>.    Debtors and the Prepetition Financing Group shall deposit all Cash Collateral now or hereafter in their possession or control into the Blocked Account (or otherwise deliver such Cash Collateral to Postpetition Lender in a manner satisfactory to Postpetition Lender) promptly upon receipt thereof.

(b)    <u>Cash Collateral in Postpetition Lender's Possession</u>.    Postpetition Lender is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its possession or control which constitute Aggregate Collateral or proceeds thereof.

(c)    <u>Application of Cash Collateral</u>.    Except as Postpetition Lender may otherwise elect, Postpetition Lender is authorized to apply all Cash Collateral (other than Disposition Proceeds) now or hereafter in Postpetition Lender's possession or control as follows: (1) first, to the payment of the Prepetition Revolving Obligations in accordance with the Prepetition Documents, until paid in full, in cash, (2) second, to the payment of Postpetition Debt consisting of Postpetition Charges, (3) third, to payment of the "DIP Revolving Loans" (as defined in the Postpetition Credit Agreement), (4) fourth, to the payment of the "DIP Term Loan A" (as defined in the Postpetition Credit Agreement), (5) fifth, (i) pending the Final Hearing, to the payment of the Prepetition Term Obligations, and (ii) upon entry of the Final Order, the "DIP Term Loan B" (as defined in the Postpetition Credit Agreement) and (6) sixth, to any other Aggregate Obligations.    With respect to any Cash Collateral that constitutes Disposition Proceeds, except as Postpetition Lender may otherwise elect, Postpetition Lender is authorized to apply all Disposition Proceeds as follows: (1) first, to the payment of the Prepetition Revolving

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

Obligations in accordance with the Prepetition Documents, until paid in full, in cash, (2) second, to the payment of Postpetition Debt consisting of Postpetition Charges, (3) third, to the payment of the "DIP Term Loan A" (as defined in the Postpetition Credit Agreement), (4) fourth, (i) pending the Final Hearing, to the payment of the Prepetition Term Obligations, and (ii) upon entry of the Final Order, the "DIP Term Loan B" (as defined in the Postpetition Credit Agreement), (5) fifth, to payment of the "DIP Revolving Loans" (as defined in the Postpetition Credit Agreement), and (6) sixth, to any other Aggregate Obligations. All such applications to Postpetition Debt shall be final and not subject to challenge by any person, including any Trustee. All such applications to Prepetition Debt shall be final, subject only to the right of parties in interest to seek a determination in accordance with Paragraph 9 below that such applications to Prepetition Debt resulted in the payment of any unsecured prepetition claim of Prepetition Financing Group. Any amounts disgorged in connection with any such objection or determination shall be first applied to reduce the Postpetition Debt, dollar-for-dollar.

(d)     Prohibition Against Use of Cash Collateral. Except as provided for in this Order, Debtors will not use or seek to use Cash Collateral, unless, in addition to the satisfaction of all requirements of Code § 363: (1) Postpetition Lender has consented to such order; (2) at the time such an order is entered, there is no Postpetition Debt outstanding and no obligation of Postpetition Lender to extend Postpetition Debt; or (3) such Cash Collateral is first used to pay the Aggregate Debt in full in cash.

3.     Authorization To Incur Postpetition Debt.

(a)     Postpetition Documents. Debtors are hereby authorized and have agreed to: (1) execute the Postpetition Documents, including all documents that Postpetition Lender reasonably requests to implement the transactions contemplated by the Postpetition Documents; and (2) perform their obligations under and comply with all of the terms and provisions of the Postpetition Documents and this Order. Upon execution and delivery thereof, the Postpetition Documents shall constitute valid and binding obligations of Debtors enforceable in accordance with their terms. To the extent there exists any conflict among the terms of the Motion, the Postpetition Documents, and this Order, this Order shall govern and control.

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

6

(b)    Permitted Uses of Postpetition Debt.  Debtors are authorized and have agreed to incur Postpetition Debt solely:  (1) in accordance with the terms and provisions of this Order, (2) upon the entry of this Order, to repay the Prepetition Lease Obligations as set forth in this Order and the Postpetition Credit Agreement, (3) to pay the expenses enumerated in the Budget, to the extent required, including the Carveout, as and when such expenses become due and payable, (4) to pay the Postpetition Charges and (5) upon entry of the Final Order, to repay the Prepetition Term Obligations.  If Postpetition Lender advances monies to Debtors and Debtors use such monies other than in accordance with the terms or provisions of this Order, such advances shall be considered Postpetition Debt for purposes of this Order.  Upon repayment of the Prepetition Lease Obligations in accordance with the terms and conditions set forth in this Order and in the Postpetition Credit Agreement, Debtors shall be deemed to have purchased the "Equipment" (as defined in the Prepetition Master Lease Agreement) and title to such Equipment shall be deemed to have transferred to the Debtors on an "as-is, where-is" basis without representation or warranty of any kind.

(c)    Certain Material Terms of Postpetition Debt.

(i)    Maximum Amount.    The maximum principal amount of Postpetition Debt outstanding shall not at any time exceed the DIP Commitment; provided, however that pending the Final Hearing, the maximum principal amount of Postpetition Debt outstanding shall not at any time exceed the Interim DIP Amount.

(ii)    Interest.  The Postpetition Debt shall bear interest at a per annum rate equal to LIBOR plus 7%.

(iii)    Closing Fee.    Debtors shall pay to Postpetition Lender a closing fee (the "Closing Fee") in an amount equal to (1) one percent (1%) of the Interim DIP Amount, which portion of the Closing Fee shall be fully earned, due and payable immediately upon the closing of the Postpetition Credit Agreement, and (2) one percent (1%) of the DIP Commitment (less the Interim DIP Amount), which portion of the Closing Fee shall be fully earned, due and payable upon entry of the Final Order.

(iv)    Maturity.    The Postpetition Debt shall mature and be due and payable in full by Debtors on the Termination Date.

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

7

(v)    Joint and Several Liability of Debtors.    The obligations of each Debtor under this Order and the Postpetition Credit Agreement shall be joint and several.

(d)    Superpriority Administrative Expense Status; Postpetition Liens.    The Postpetition Debt is hereby granted superpriority administrative expense status under Code § 364(c)(1), with priority over all costs and expenses of administration of the Cases that are incurred under any provision of the Code.  In addition, Postpetition Lender is hereby granted the Postpetition Liens to secure the Postpetition Debt.  The Postpetition Liens:  (1) are in addition to the Prepetition Liens; (2) pursuant to Code §§ 364(c)(2), (c)(3) and 364(d), are Priority Liens (subject only to Permitted Priority Liens and the Prepetition Liens) without any further action by Debtors or Postpetition Lender and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; (3) shall not be subject to any security interest or lien which is avoided and preserved under Code § 551; (4) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Cases; (5) shall not be subject to Code § 510(c); and (6) upon entry of the Final Order, shall not be subject to any landlord's lien, bailee's rights, right of distraint or levy, security interest or other interest that any landlord, bailee, warehousemen or landlord's mortgagee may have in the Aggregate Collateral located on such leased premises.  Notwithstanding the foregoing, Debtors shall execute and deliver to Postpetition Lender such financing statements, mortgages, instruments and other documents as Postpetition Lender may request from time to time, and any such documents filed by Postpetition Lender shall be deemed filed as of the Filing Date.  Further, all Prepetition Third Party Documents shall be deemed to be for the benefit of Postpetition Lender without further action by any party.

(e)    Prohibition Against Additional Debt.    Debtors will not incur or seek to incur debt secured by a lien which is equal to or superior to the Prepetition Liens or the Postpetition Liens, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code § 364:    (1) Postpetition Lender has consented to such order; (2) at the time such an order is entered, there is

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

8

1  no Postpetition Debt outstanding, and no obligation of Postpetition Lender to extend Postpetition

2  Debt; or (3) such credit or debt is first used to pay the Aggregate Debt in full in cash.

3      4.    Adequate Protection of Interests of Prepetition Financing Group in the Prepetition

4  Collateral and the Prepetition Liens.  Prepetition Financing Group has consented to the terms of

5  this Order and are entitled to adequate protection as set forth herein and to the extent required

6  under Code §§ 361, 362, 363 or 364 (including for any decrease in the value of such interests in

7  the Prepetition Collateral from and after the Filing Date).

8          (a)    Priority of Prepetition Liens/Allowance of Prepetition Financing Group's

9  Claim.  Subject to the terms of Paragraph 9 of this Order: (1) the Prepetition Liens shall

10  constitute Priority Liens, subject only to the Permitted Priority Liens; (2) the Prepetition Debt

11  constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the

12  terms of the Prepetition Documents; (3) no offsets, defenses or counterclaims to the Prepetition

13  Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization or

14  subordination pursuant to the Code or applicable nonbankruptcy law; and (4) Prepetition

15  Financing Group's claims with respect to the Prepetition Debt shall for all purposes constitute an

16  allowed claim within the meaning of Code § 506 in an amount not less than $14,757,771.75,

17  exclusive of accrued and accruing Allowable 506(b) Amounts.

18          (b)    Replacement Liens.  Prepetition Financing Group is hereby granted the

19  Replacement Liens as security for payment of the Prepetition Debt.  The Replacement Liens:  (1)

20  are and shall be in addition to the Prepetition Liens; (2) are and shall be properly perfected, valid

21  and enforceable liens without any further action by Debtors or Prepetition Financing Group and

22  without the execution, filing or recordation of any financing statements, security agreements,

23  mortgages or other documents or instruments; and (3) shall remain in full force and effect

24  notwithstanding any subsequent conversion or dismissal of the Cases.  Notwithstanding the

25  foregoing, Debtors are authorized to and shall execute and deliver to Prepetition Financing

26  Group such financing statements, mortgages, instruments and other documents as Prepetition

27  Financing Group may request from time to time in respect of the Replacement Liens.

28

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

9

(c)    Allowed Code § 507(b) Claim.   If and to the extent the adequate protection of the interests of Prepetition Financing Group in the Prepetition Collateral granted pursuant to this Order proves insufficient, Prepetition Financing Group shall have an allowed claim under Code § 507(b), subject to the Carveout, in the amount of any such insufficiency, with priority over:  (1) all costs and expenses of administration of the Cases that are incurred under any provision of the Code; and (2) the claims of any other party in interest under Code § 507(b).

5.    Sale Covenants.   To effectuate the sale process for all or substantially all of the Debtors' assets, Debtors have agreed to and are authorized and directed to:

(a)    Sale Procedures.  Obtain, on or before August 16, 2013, one or more Court orders approving the procedures for the sale of all or substantially all of the Debtors' assets, which procedures shall be in form and substance satisfactory to Postpetition Lender (the "Bid Procedures Order").

(b)    Auction.  Conduct, on or before September 4, 2013, one or more auctions for the sale of all or substantially all of the Debtors' assets (the "Auction").

(c)    Sale Hearing.  Request, on or September 6, 2013, one or more orders of the Court approving the sale of all or substantially all of the Debtors' assets, which order shall be in form and substance satisfactory to Postpetition Lender (the "Sale Order").

(d)    Sale Closing.  Consummate, on or before September 27, 2013, one or more sales of all or substantially all of the Debtors' assets, on terms and conditions satisfactory to Postpetition Lender, and remit the proceeds thereof (net only of such fees, expenses or other amounts that may be expressly agreed to, in writing, by Prepetition Financing Group and Postpetition Lender) to Postpetition Lender for application pursuant to the terms of this Order.

Debtors and Postpetition Lender may agree to amend or modify the foregoing sale covenants without the need of further notice and hearing or order of this Court (other than a notice of such amendment or modification to be filed with this Court).

6.    Termination Date; Rights and Remedies.

(a)    Effect of Termination Date.   Unless extended by the Court upon the written agreement of Postpetition Lender, upon the Termination Date without further notice or order of Court: (1) Debtors' authorization to use Cash Collateral and incur Postpetition Debt

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

1    hereunder will automatically terminate; and (2) at Postpetition Lender's election: (i) the

2    Postpetition Debt shall be immediately due and payable, (ii) Debtors shall be prohibited from

3    using Cash Collateral for any purpose other than application to the Aggregate Debt in accordance

4    with Paragraph 2(c) of this Order and (iii) Postpetition Lender shall be entitled to setoff any cash

5    in its possession or control and apply such cash to the Aggregate Debt in accordance with

6    Paragraph 2(c) of this Order.

7            (b)    Rights and Remedies.  On the fifth (5th) business day after the Termination

8    Date, at Postpetition Lender's election, and without further order of the Court:  (1) Prepetition

9    Financing Group and Postpetition Lender shall have automatic and immediate relief from the

10    automatic stay with respect to the Aggregate Collateral (without regard to the passage of time

11    provided for in Fed. R. Bankr. P. 4001(a)(3)), and shall be entitled to exercise all rights and

12    remedies available to them under the Prepetition Documents, the Postpetition Documents and

13    applicable nonbankruptcy law; and (2) Debtors shall surrender the Aggregate Collateral and

14    otherwise cooperate with Prepetition Financing Group and Postpetition Lender in the exercise of

15    their rights and remedies under the Prepetition Documents, the Postpetition Documents and

16    applicable nonbankruptcy law, including, without limitation, by filing a motion to retain one or

17    more agents to sell, lease or otherwise dispose of the Aggregate Collateral upon the request and

18    subject to terms and conditions acceptable to Prepetition Financing Group and Postpetition

19    Lender.  Notwithstanding the foregoing, during the five (5) business day period following the

20    Termination Date, Debtors may seek an order of this Court determining that an Event of Default

21    alleged to have given rise to the Termination Date did not occur and that Postpetition Lender be

22    restrained from exercising the rights and remedies provided in this subparagraph (b) pending this

23    Court's determination with respect to such Event(s) of Default; provided, however, that during

24    such five (5) business day period, Postpetition Lender shall have no obligation to advance

25    Postpetition Debt to Debtors or permit Debtors to use Cash Collateral, or such longer period

26    during which the Postpetition Lender may be so restrained from exercising such rights and

27    remedies.

28

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

11

(c)    <u>Access to Collateral</u>.  Upon the entry of the Final Order, notwithstanding anything to the contrary herein, upon written notice to the landlord of any of Debtors' leased premises that an Event of Default has occurred and is continuing, Prepetition Financing Group and Postpetition Lender may enter upon such leased premises for the purpose of exercising any right or remedy with respect to the Aggregate Collateral located thereon and shall be entitled to the Debtors' rights and privileges under such lease(s) without interference from such landlord; <u>provided</u> that Prepetition Financing Group or Postpetition Lender shall pay to such landlord rent first accruing after the above referenced written notice and during the period of occupancy by Prepetition Financing Group or Postpetition Lender, calculated on a per diem basis.

7.    <u>Carveout</u>.

(a)    <u>Carveout Terms</u>.  The Carveout with respect to each Carveout Professional: (1) shall equal an aggregate amount not to exceed the lesser of (i) the aggregate amount provided in the Budget for such Carveout Professional for the period commencing on the Filing Date and ending on the Termination Date and (ii) the aggregate amount of allowed fees and expenses for such Carveout Professional that accrue during the period commencing on the Filing Date and ending on the Termination Date; (2) shall be reduced dollar-for-dollar by any payments of fees and expenses to such Carveout Professional; and (3) shall be paid out of any prepetition retainer or property of the estate (other than property subject to an unavoidable lien in favor of the Prepetition Financing Group or the Postpetition Lender) held by such Carveout Professional before such payments are made from proceeds of the Postpetition Debt or the Aggregate Collateral.  Further, Postpetition Lender shall have the right to reserve against the DIP Commitment an amount equal to the sum of the aggregate amount of unpaid fees and expenses set forth in the Budget for the Carveout Professionals.  Except as set forth in the preceding sentence, Postpetition Lender shall have no obligation to fund any fees or expenses of Carveout Professionals accrued on, prior to, or after the Termination Date.

(b)    <u>Carveout Usage</u>.  No portion of the Carveout and no Postpetition Debt or Aggregate Collateral may be used to pay any fees or expenses incurred by any entity, including the Debtors, any Committee or the Carveout Professionals, in connection with claims or causes

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

12

of action adverse to Prepetition Financing Group's or Postpetition Lender's interests in the Aggregate Collateral, including (1) preventing, hindering or delaying Prepetition Financing Group's or Postpetition Lender's enforcement or realization upon any of the Aggregate Collateral once an Event of Default has occurred; (2) using or seeking to use Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any Aggregate Collateral without Prepetition Financing Group's and Postpetition Lender's consent; or (3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Aggregate Debt or any mortgages, liens or security interests with respect thereto or any other rights or interests of Prepetition Financing Group or Postpetition Lender, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Prepetition Financing Group and Postpetition Lender; provided, however, that the Carveout may be used to pay fees and expenses incurred by the Carveout Professionals in connection with the negotiation, preparation and entry of this Order or any amendment hereto consented to by Postpetition Lender.

(c)    Carveout Procedure.    In accordance with the Postpetition Credit Agreement, the Debtors shall provide to the Postpetition Lender a written report (the "Carveout Report"), in which the Debtors disclose their then current estimate of (1) the aggregate amount of unpaid professional fees, costs and expenses accrued or incurred by the Carveout Professionals, through the date of the Carveout Report, and (2) projected fees, costs and expenses of the Carveout Professionals for the 30 day period following the date of such Carveout Report. Nothing herein shall be construed as consent by Prepetition Financing Group or Postpetition Lender to the allowance of any fees or expenses of the Carveout Professionals or shall affect the right of Prepetition Financing Group and Postpetition Lender to object to the allowance and payment of such fees, costs or expenses, or the right of Postpetition Lender to the return of any portion of the Carveout that is funded with respect to fees and expenses for a Carveout Professional that are approved on an interim basis that are later denied on a final basis. For the avoidance of doubt, no Carveout Professional shall be entitled to any portion of the Carveout allocated for any other Carveout Professional in the Budget.

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

8.    No Surcharge.   In the exercise of their business judgment, Debtors (or any Trustee) agree that (a) effective upon the entry of the Bid Procedures Order, there shall be no surcharge of the Aggregate Collateral for any amount that may become owing by the Debtors to the "Purchaser" (any such amounts hereinafter referred to as the "Purchaser Obligations") under and as defined in the Stalking Horse Asset Purchase Agreement, and (b) effective upon entry of the Final Order, there shall be no surcharge of the Aggregate Collateral for any purpose, unless agreed to by Prepetition Financing Group and Postpetition Lender.  Further, Debtors represent that the Budget contains all expenses that are reasonable and necessary for the operation of their businesses and the preservation of the Aggregate Collateral through the period for which the Budget runs, and therefore includes all items potentially chargeable to Prepetition Financing Group or Postpetition Lender under Code § 506(c).  Therefore, effective upon entry of the Final Order (and effective on the date hereof as it relates to the Purchaser Obligations), the Debtors (or any Trustee) shall be deemed to have waived any rights, benefits or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against the Prepetition Financing Group, Postpetition Lender, or the Aggregate Collateral.  In reliance on the foregoing, Prepetition Financing Group and Postpetition Lender have agreed to the entry of this Order.   For the avoidance of doubt, to the extent that the Purchaser is entitled to receive the "Break-Up Fee" (as defined in the Stalking Horse Asset Purchase Agreement), this Paragraph shall not be deemed to in any way affect the Purchaser's right to receive the Break-Up Fee directly from the proceeds of a "Subsequent Transaction" (as defined in the Sale Motion (as defined below)) that arises in connection with or results from the process contemplated by the *Emergency Motion for Entry of an Order (A) Approving Bid Procedures and Sale Procedures; (B) Approving Form and Manner of Notices; (C) Approving Form of Asset Purchase Agreement, Including Break-Up Fee; (D) Scheduling Dates to Conduct Auction and Hearing to Consider Final Approval of Sale and Related Matters; (E) Approving Sale of Substantially All of Certain Debtors' Assets Related Solely to the ATM Business Free and Clear of All Liens, Claims, Encumbrances and Interests; and (E) Granting Related Relief* [ECF No. __] (the "Sale Motion").

14

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

9.     Reservation of Rights; Bar of Challenges and Claims.   The stipulations and representations contained in this Order, including, without limitation, in Paragraphs D, shall be binding on all Challenge Parties, unless and solely to the extent that (i) the Debtors receive written notice of a potential Challenge during the Investigation Period from any Challenge Party and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.

(a)     Challenge Procedure.   During the Investigation Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists.   If a Challenge Party identifies a basis to assert a Challenge, it must notify the Debtors during the Investigation Period of its demand that the Debtors initiate an action or adversary proceeding relating thereto and from the date that the Debtors are so notified, the Debtors shall have five (5) days to notify the Challenge Party of whether the Debtors intend to initiate such action and ten (10) days to initiate such action.   If the Debtors notify such Challenge Party that the Debtors do not intend to initiate an action or adversary proceeding, the Challenge Party shall have ten (10) days from the receipt of such notice to initiate an action or adversary proceeding.   Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court.   The Debtors, if timely notified of a potential Challenge, shall retain authority to prosecute, settle or compromise such Challenge in the exercise of their business judgment and subject to any applicable further order of court.

(b)     Bar of Challenges and Claims.   If the Debtors do not receive notice of a potential Challenge during the Investigation Period (or such later date as agreed in writing by Prepetition Financing Group or for cause shown by an order of this Court), without further order of the Court, (1) the claims, liens and security interests of the Prepetition Financing Group shall be deemed to be allowed for all purposes in these Cases and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise, and (2) the Debtors and their estates shall be deemed to have waived, released and discharged Prepetition Financing Group and their respective officers, directors, principals, attorneys, consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of entry of this Order with

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

15

respect to or in connection with the Prepetition Debt, the Prepetition Liens, the Prepetition Documents or otherwise.

10.    <u>Right to Credit Bid</u>.  In connection with the sale or other disposition of all or any portion of the Aggregate Collateral, whether under Code § 363, Code § 1129 or otherwise, pursuant to Code § 363(k), (a) Postpetition Lender shall have the right to use the Postpetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral, and (b) Prepetition Financing Group shall have the right to use the Prepetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral, so long as any such credit bid by Prepetition Financing Group provides for a cash payment sufficient to repay the Postpetition Debt in full in cash; <u>provided</u>, <u>however</u>, that Postpetition Lender and the Prepetition Financing Group hereby agree that they will not exercise their respective rights to credit bid pursuant to Code § 363(k) so long as (i) the Stalking Horse Asset Purchase Agreement has not been terminated and (ii) in the event that an Auction is held, the Purchaser (as defined in the Stalking Horse Purchase Agreement) continues to actively bid at such Auction in accordance with the Bid Procedures (as defined in the Bid Procedures Order).

11.    <u>Plan</u>.  Unless Prepetition Financing Group and Postpetition Lender consent thereto, Debtors shall not seek entry of an order confirming a plan in these Cases unless the Aggregate Debt shall be paid in full in cash on the earlier of (a) the effective date thereof, and (b) the Termination Date, notwithstanding anything to the contrary in any such order confirming a plan.

12.    <u>Waiver of Right to Return/Consent to Setoff</u>.  Debtors hereby waive their rights: (a) to return any of the Aggregate Collateral pursuant to Code § 546(h); (b) to consent to any order permitting any claims pursuant to Code § 503(b)(9) (provided that nothing contained herein shall require Debtors to oppose any claims made thereunder); and (c) to consent to setoff pursuant to Code § 553 (provided that nothing contained herein shall require Debtors to oppose any setoff asserted thereunder).

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

13.    <u>Indemnification</u>.    Debtors shall indemnify and hold harmless Prepetition Financing Group and Postpetition Lender in accordance with the Prepetition Documents and the Postpetition Documents, respectively.

14.    <u>No Marshaling</u>.  None of Prepetition Financing Group, Postpetition Lender or any of the Aggregate Collateral shall be subject to the doctrine of marshaling.

15.    <u>Postpetition Charges</u>.  All Postpetition Charges shall be promptly paid by Debtors in accordance with this Order and the Postpetition Documents, without need for filing an application with the Court for approval or payment thereof.

16.    <u>Force and Effect of Prepetition Documents</u>.   Except as modified herein and subject to the other provisions of this Order and the Code, the Prepetition Documents shall remain in full force and effect with respect to the Prepetition Debt.  To the extent there exists any conflict among the terms of the Motion, the Prepetition Documents and this Order, this Order shall govern and control.

17.    <u>Modification of Stay</u>.  The automatic stay of Code § 362 is hereby modified with respect to Prepetition Financing Group and Postpetition Lender to the extent necessary to effectuate the provisions of this Order, including, after the Termination Date, to permit Prepetition Financing Group and Postpetition Lender to exercise their respective rights contemplated by Paragraph 6 above.

18.    <u>No Waiver</u>.  Neither Prepetition Financing Group nor Postpetition Lender shall be deemed to have suspended or waived any of their rights or remedies under this Order, the Prepetition Documents, the Postpetition Documents, the Code, and applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of Prepetition Financing Group or Postpetition Lender, as applicable, and directed to Debtors.  No failure of Prepetition Financing Group or Postpetition Lender to require strict performance by Debtors (or by any Trustee) of any provision of this Order shall waive, affect or diminish any right of Prepetition Financing Group or Postpetition Lender thereafter to demand strict compliance and performance therewith, and no delay on the part of Prepetition Financing Group and Postpetition Lender in the exercise of any right or remedy under this Order, the Prepetition

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

Documents, the Postpetition Documents, the Code, or applicable nonbankruptcy law shall preclude the exercise of any right or remedy. Further, this Order shall not constitute a waiver by Prepetition Financing Group of any of their rights under the Prepetition Documents, the Code or applicable nonbankruptcy law, including, without limitation their right to later assert: (1) that, any of their interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof; or (2) a claim under Code § 507(b).

19.    "Responsible Person." By taking any actions pursuant to this Order, Postpetition Lender shall not: (a) be deemed to be in control of the operations or liquidation of Debtors; or (b) be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of Debtors. The foregoing provision of this paragraph shall not be effective until entry of the Final Order.

20.    Release. Upon the date that the Postpetition Debt is paid in full in cash and prior to the release of the Postpetition Liens, Debtors shall execute and deliver to Postpetition Lender a general release of any and all claims and causes of action that could have been asserted or raised under or in connection with the Postpetition Documents.

21.    Amendments. Debtors and Postpetition Lender may enter into amendments or modifications of the Postpetition Documents or the Budget without further notice and hearing or order of this Court; provided, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest, and (b) notice of any such amendment or modification is filed with this Court.

22.    Proof of Claim. The Prepetition Financing Group shall not be required to file a proof of claim with respect to any of the Prepetition Debt, and the stipulations and findings set forth in this Order shall constitute an informal proof of claim in respect thereof. Notwithstanding the foregoing or any subsequent order of Court concerning proof of claim filing requirements, each of Prepetition Lender and Prepetition Lessor is authorized (but not obligated) to file a single master proof of claim in Case No. 13-51562 on account of its claims arising under the applicable Prepetition Documents and hereunder and such master proof of claim shall be deemed filed as a claim against each of the Debtors.

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

23.    <u>Binding Effect</u>. Except as provided in Paragraph 9 herein, this Order shall be binding on all parties in interest in the Cases and their respective successors and assigns, including any Trustee, except that any Trustee shall have the right to terminate this Order after notice and a hearing. If, in accordance with Code § 364(e), this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect: (a) subject to Paragraph 9 of this Order, the stipulations, representations, and findings contained in this Order and the relief granted by and the releases contained in this Order (including, without limitation, Paragraphs 2(d) 3(e) and 8); and (b) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby with respect to Cash Collateral used or Postpetition Debt incurred prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order, and Postpetition Lender shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein, with respect to the Postpetition Debt. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

24.    <u>Survival</u>. The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Cases: (a) confirming any chapter 11 plan, (b) converting any Case to a case under chapter 7 of the Code, (c) dismissing any Case, (d) withdrawing of the reference of any Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court. The terms and provisions of this Order, including, without limitation, the rights granted Postpetition Lender under Code §§ 364(c) and (d), shall continue in full force and effect until all of the Aggregate Debt is indefeasibly paid in full in cash and discharged.

25.    <u>Notice of Final Hearing</u>. The Final Hearing is scheduled for August [__], 2013, and may be continued from time to time without further notice other than that given in open

19

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

court. Debtors are directed to immediately serve a copy of this Order by first class mail, postage prepaid, on counsel for Prepetition Financing Group, Debtors' other secured creditors, Debtors' twenty (20) largest unsecured creditors, and the United States Trustee, which service shall constitute adequate and proper notice of the Final Hearing. Any objection to the Order must be filed with the Court and received by counsel for the Debtors, the Postpetition Lender, and the United States Trustee no later than seventy-two (72) hours prior to the commencement of the Final Hearing. Any timely and properly filed and served objection will be heard at the Final Hearing.

**IT IS SO ORDERED.**

PREPARED AND SUBMITTED:

GORDON SILVER

By: _____
GERALD M. GORDON, ESQ.
BRIAN R. IRVINE, ESQ.
GABRIELLE A. HAMM, ESQ.
100 West Liberty Street, Suite 940
Reno, Nevada 89501

*And*

SMITH, GAMBRELL & RUSSELL, LLP
BRIAN P. HALL, ESQ.
NICHOLAS J. ROECKER, ESQ.
Promenade II, Suite 3100
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309

*Proposed Counsel to the Debtors and Debtors-in-Possession*

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

20

1

## **LR 9021 CERTIFICATION**

2       In accordance with LR 9021, counsel submitting this document certifies that the order

3   accurately reflects the court's ruling and that (check one):

4       ☐   The court waived the requirement of approval under LR 9021(b)(1).

5       ☐   No party appeared at the hearing or filed an objection to the motion.

6       ☐   I have delivered a copy of this proposed order to all counsel who
            appeared at the hearing, and any unrepresented parties who appeared at
7           the hearing, and each has approved or disapproved the order, or failed to
            respond, as indicated below [list each party and whether the party has
8           approved, disapproved, or failed to respond to the document]:

9       ☐   I certify that this is a case under Chapter 7 or 13, that I have served a
            copy of this order with the motion pursuant to LR 9014(g), and that no
10          party has objection to the form or content of the order.

11

12

13                                      ###

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

21

**EXHIBIT A**
**DEFINED TERMS**

1.    ***Aggregate Collateral.***   Collectively, the Prepetition Collateral and the Postpetition Collateral.

2.    ***Aggregate Debt.***   Collectively, the Prepetition Debt and the Postpetition Debt.

3.    ***Allowable 506(b) Amounts***.   To the extent allowable under Code § 506(b), interest at the default rate of interest as set forth in Section 2.6 of the Prepetition Credit Agreements, all fees, costs, expenses, and other charges due or coming due under the Prepetition Documents or in connection with the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget), and all costs and expenses at any time incurred by Prepetition Financing Group in connection with: (a) the negotiation, preparation and submission of this Order and any other order or document related hereto, and (b) the representation of Prepetition Financing Group in the Cases, including in defending any Challenge.

4.    ***Blocked Account.***   Account No. 7450360925 at Fifth Third Bank.

5.    ***Budget.***   The budget attached to this Order as Exhibit B, as amended, modified or supplemented from time to time, as may be agreed to by Postpetition Lender.

6.    ***Carveout.***   Collectively, (a) all fees required to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), and (b) with respect to each Carveout Professional, the allowed fees and disbursements of such Carveout Professional from time to time pursuant to Code § 330, in the aggregate amount set forth in Paragraph 7 of this Order.

7.    ***Carveout Professionals.***   Smith Gambrell & Russell, LLP, Gordon Silver, MorrisAnderson & Associates, Ltd., Golding & Company, Inc. and the United States Trustee.

8.    ***Cases.***   The chapter 11 cases or any superseding chapter 7 cases of the Debtors.

9.    ***Cash Collateral.***   All "cash collateral," as that term is defined in Code § 363(a), in which Prepetition Financing Group and Postpetition Lender have an interest, all deposits subject to setoff rights in favor of Prepetition Financing Group and Postpetition Lender, and all cash arising from the collection or other conversion to cash of the Aggregate Collateral, including from the sale of inventory and the collection of accounts receivable.

10.    ***Challenge***.   A claim or cause of action challenging the extent, validity, perfection, priority or enforceability of the Prepetition Debt, the Prepetition Liens or any other claims or causes of action against Prepetition Financing Group, which Debtors, the Committee, or another party-in-interest may bring, in accordance with Paragraph 9 of this Order.

11.    ***Challenge Party.***   The Committee, any Trustee, or other party-in-interest with the requisite standing.

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

12.    *Code*.  The United States Bankruptcy Code (11 U.S.C. § 101 *et seq*.), as amended, and any successor statute.  Unless otherwise indicated, all statutory section references in this Order are to the Code.

13.    *Committee*.  Any official creditors' committee appointed to represent unsecured creditors in these Cases pursuant to Code § 1102.

14.    *DIP Commitment*.  The sum of the DIP Revolver Commitment, plus the "DIP Term Loan A", plus the "DIP Term Loan B" (as each term is defined in the Postpetition Credit Agreement), in an aggregate amount not to exceed $16,729,164.58.

15.    *DIP Revolver Commitment*. The "DIP Revolver Commitment" as defined in the Postpetition Credit Agreement, in an amount not to exceed $4,000,000.

16.    *Disposition Proceeds*.  All proceeds from sales or other dispositions of all or any portion of the Aggregate Collateral other than in the ordinary course of Debtors' businesses.

17.    *Event of Default*.  At Postpetition Lender's election, (a) the occurrence and continuance of any "Event of Default" first arising after the Filing Date under and as defined in the Postpetition Credit Agreement; and (b) Debtors' failure to comply with the covenants or perform any of their obligations in strict accordance with the terms of this Order.

18.    *Filing Date*. August 5, 2013.

19.    *Final Hearing*.  The final hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

20.    *Final Order*.  A final order authorizing Debtors to use Cash Collateral and incur Postpetition Debt entered at or in connection with the Final Hearing.

21.    *Interim DIP Amount*.  The sum of the DIP Revolver Commitment and the "DIP Term Loan A" (as defined in the Postpetition Credit Agreement), in an amount not to exceed $11,578,233.

22.    *Investigation Period*.  The period from the Filing Date until the date that is the earlier of (1) seventy-five (75) days after the Filing Date, (2) sixty (60) days after the date that a Committee is formed, if any, and (3) the auction deadline established in connection with the Sale Covenants (as amended or modified from time to time in accordance with Paragraph 5 of this Order.

23.    *Obligations*.  The "Obligations", as that term is defined in the Postpetition Credit Agreement.

24.    *Permitted Priority Liens*.  Collectively, (a) the Carveout, and (b) liens in favor of third parties upon the Prepetition Collateral, which third-party liens, as of the Filing Date: (1) had priority under applicable law over the Prepetition Liens, (2) were not subordinated by agreement or applicable law, and (3) were non-avoidable, valid, properly perfected and enforceable as of the Filing Date.

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

25. ***Postpetition Charges*.** Interest at the applicable rate of interest under the Postpetition Credit Agreement and all fees, costs, and expenses provided for in the Postpetition Credit Agreement, including, without limitation, those incurred by Postpetition Lender (prepetition and postpetition) in connection with documentation, negotiation, administration and enforcement of the Postpetition Debt (regardless of whether any such fees, costs, interest and other charges are included in the Budget).

26. ***Postpetition Collateral*.** All of the real and personal property of Debtors of any description whatsoever, wherever located and whenever arising or acquired, including all cash, accounts, inventory, equipment, fixtures, chattel paper, general intangibles (including, solely with respect to the "DIP Revolving Loans" (as defined in the Postpetition Credit Agreement ) upon entry of the Final Order, claims and proceeds under Code §§ 544, 547, 548, 549, 550 and 553), all leaseholds, all commercial torts, all other "Collateral" (as that term is defined in the Postpetition Credit Agreement), and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing.

27. ***Postpetition Credit Agreement*.** That certain Debtor-in-Possession Credit Agreement dated as of August [__], 2013, by and between Debtors and Postpetition Lender, as amended, modified, supplemented, replaced or refinanced from time to time.

28. ***Postpetition Debt*.** All indebtedness or obligations of Debtors to Postpetition Lender incurred on or after the Filing Date pursuant to the Postpetition Credit Agreement, this Order or otherwise, including all Obligations and any advances made by Postpetition Lender to pay the Carveout.

29. ***Postpetition Documents*.** The Postpetition Credit Agreement and the "Related Documents" (as that term is defined in the Postpetition Credit Agreement).

30. ***Postpetition Liens*.** Priority Liens in the Aggregate Collateral, subject only to Permitted Priority Liens and the Prepetition Liens.

31. ***Prepetition Collateral*.** All of the "Collateral" (as that term is defined in the Prepetition Credit Agreements) existing as of the Filing Date, and all proceeds, rents, issues, profits and products thereof.

32. ***Prepetition Credit Agreements*.** Collectively, that certain (a) Prepetition Initial Loan Agreement, (b) Global Acxess 2011 Loan and Security Agreement dated September 28, 2011, (c) Global Acxess 2011-B Loan and Security Agreement dated November 23, 2011, and (d) Global Acxess 2011-C Loan and Security Agreement dated on or about December 29, 2011; in each case by and among Debtors (other than Insta Video, Inc.) and Prepetition Lender, as amended, supplemented or otherwise modified from time to time.

33. ***Prepetition Debt*.** (a) All indebtedness or obligations under the Prepetition Documents as of the Filing Date, including, without limitation, all "Obligations" (as defined in the Prepetition Credit Agreements), all "Rent" (as defined in the Prepetition Master Lease Agreement) and all fees, costs, interest, and expenses as and when due and payable pursuant to the Prepetition Documents, plus (b) all Allowable 506(b) Amounts.

24

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

34. ***Prepetition Documents***.  The (a) Prepetition Credit Agreements and the "Loan Documents" (as that term is defined in the Prepetition Credit Agreements) and (b) Prepetition Lease Agreements and the "Lease Documents" (as that term is defined in the Prepetition Master Lease Agreement).

35. ***Prepetition Financing Group***.  Collectively, the Prepetition Lender and the Prepetition Lessor.

36. ***Prepetition Initial Loan Agreement***.  That certain Loan and Security Agreement dated June 18, 2010, by and among the Debtors (other than Insta Video, Inc.) and Prepetition Lender, as amended, supplemented or otherwise modified from time to time.

37. ***Prepetition Lease Agreements***.  Collectively, that certain (a) Prepetition Master Lease Agreement, (b) Equipment Schedule No. 001 dated March 21, 2011, (c) Equipment Schedule No. 002 dated November 21, 2011, (d) Equipment Schedule No. 003 dated February 10, 2012, (e) Equipment Schedule No. 004 dated February 10, 2012, (f) Equipment Schedule No. 005 dated February 10, 2012, (g) Equipment Schedule No. 006 dated February 10, 2012, (h) Interim Funding Schedule No. 001, (i) Interim Funding Schedule No. 002 dated January 19, 2012, and (j) any other lease agreements and/or schedules executed in connection therewith, in each case, by and among the "Lessees" party thereto and Prepetition Lessor, as amended, supplemented or otherwise modified from time to time.

38. ***Prepetition Lease Obligations***.  Collectively, all "Rent" (as defined in the Prepetition Master Lease Agreement) and other obligations of any Borrower under the Existing Lease Agreements.

39. ***Prepetition Lessor***.  Fifth Third Equipment Finance Company, together with its successors and assigns.

40. ***Prepetition Liens***.  Prepetition Financing Group's asserted security interests in the Prepetition Collateral under the Prepetition Documents, subject only to Permitted Priority Liens.

41. ***Prepetition Master Lease Agreement***.  That certain Master Equipment Lease Agreement dated June 18, 2010, by and among the "Lessees" party thereto and Prepetition Lessor (as amended, supplemented or otherwise modified from time to time).

42. ***Prepetition Revolving Obligations***.  The "Obligations" (as defined in the Prepetition Credit Agreements) related to the "Revolving Loans" (as defined in the Prepetition Initial Loan Agreement), which, as of the Filing Date, was an amount not less than $2,028,607.17, which includes interest, fees, costs and expenses incurred in connection therewith as of the Filing Date (including, without limitation fees in the amount of $250,000, as acknowledged pursuant to Section 2(b) of that certain Fourth Forbearance Agreement dated as of May 24, 2013, and effective as of May 21, 2013, by and among Borrowers and DIP Lender).

43. ***Prepetition Term Obligations***.  All "Obligations" (as defined in the Prepetition Credit Agreements) other than the Prepetition Revolving Obligations, and including, for the avoidance of doubt the "Rate Management Obligations" (as defined in the Prepetition Credit Agreements).

25

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

44.    ***Prepetition Third Party Documents***.    Collectively, Debtors' deposit account control agreements, leases, licenses, landlord agreements, warehouse agreements, bailment agreements, insurance policies, contracts or other similar agreements in which Prepetition Financing Group has an interest.

45.    ***Priority Liens***.    Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Code, any agreement, or applicable nonbankruptcy law.

46.    ***Replacement Liens***.    Priority Liens in the Postpetition Collateral granted to Prepetition Financing Group pursuant to this Order, subject only to the Permitted Priority Liens.

47.    ***Sale Covenants.***    Those covenants set forth in Paragraph 5 of this Order.

48.    ***Stalking Horse Asset Purchase Agreement***.    That certain Asset Purchase Agreement dated as of August 5, 2013, entered into by Global Axcess Corp., a Nevada corporation, Nationwide Money Services Inc., a Nevada corporation, EFT Integration, Inc., a Florida corporation, as sellers, and Financial Consulting & Trading International, Inc., as the purchaser, subject to approval by this Court.

49.    ***Termination Date***.    At Postpetition Lender's election, the earliest to occur of:  (a) the date on which Postpetition Lender provides, via facsimile or overnight mail, written notice to counsel for Debtors and counsel for any Committee of the occurrence and continuance of an Event of Default; (b) the date that is 21 days following the entry of this Order if the Final Order is not entered in form and substance satisfactory to Postpetition Lender by such date; (c) the date of the Final Hearing, if this Order is modified at the Final Hearing in a manner unacceptable to Prepetition Financing Group or Postpetition Lender; (d) September 6, 2013, if one or more orders of the Court approving the sale of all or substantially all of the Debtors' assets are not entered in form and substance acceptable to Postpetition Lender prior to such date; (e) the closing date of the sale of substantially all of the assets of the Debtors (which shall include, for the avoidance of doubt, the "ATM Business" (as defined in the Stalking Horse Asset Purchase Agreement)) in accordance with the Sale Covenants; (f) the date on which the Aggregate Debt is indefeasibly paid in full in cash; and (g) October 31, 2013.

50.    ***Trustee***.    Any trustee appointed or elected in the Cases.

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>EXHIBIT B</u>**

**BUDGET**

**[attached]**

Gordon Silver
Attorneys At Law
100 W. Liberty Street,
Suite 940
Reno, Nevada 89501
(775) 343-7500

104281-001/2014257_2.doc

**Global Axcess Corp.**
*Weekly Cash Flow Projection*
$ in 000s

| (week-ending, Sunday) | FN | Budget 1 11-Aug | Budget 2 18-Aug | Budget 3 25-Aug | Budget 4 1-Sep | Total |
|---|---|---|---|---|---|---|
| ***Cash Receipts*** | | | | | | |
| ATM Surcharge | | $ 281 | $ 521 | $ 511 | $ 506 | $ 1,819 |
| Interchange | | 381 | 77 | - | 28 | 485 |
| DVD Rentals | | 17 | 25 | 19 | 14 | 75 |
| Deposits/Other | | 5 | 10 | 10 | 10 | 35 |
| Asset sales | | - | - | - | - | - |
| | | 683 | 633 | 540 | 558 | 2,415 |
| ***Cash Disbursements*** | | | | | | |
| **ATM business** | | | | | | |
| ATM Processing | | $ - | $ - | $ 48 | $ 100 | $ 148 |
| ATM Commissions | | 910 | 134 | 762 | | 1,806 |
| *ATM Commissions - Timing Adjustments* | | - | | - | | - |
| Cash Management/Maintenance Services | | - | 73 | 73 | 73 | 218 |
| **DVD business** | | | | | | |
| DVD Commissions | | - | | - | | - |
| DVD Processing | | 26 | 5 | - | | 31 |
| DVD Title Purchases | | - | | - | | - |
| **Employee costs** | | | | | | |
| Payroll incl. taxes | | 52 | 52 | 52 | 52 | 206 |
| Benefits/401(k) | | 35 | - | - | | 35 |
| Expense Reports (T&E) | | 5 | 10 | 10 | 10 | 35 |
| **Other expenses** | | | | | | |
| Insurance | | - | - | - | | - |
| Equipment Leases | | - | - | - | 13 | 13 |
| Rent & Facilities | | 11 | - | - | | 11 |
| Materials & Supplies | | - | 15 | 15 | 15 | 45 |
| Transport/Shipping | | - | 5 | 5 | 5 | 15 |
| Utilities (Phone, IT) | | - | 57 | 19 | 19 | 95 |
| Taxes | | - | - | - | 5 | 5 |
| Capital Expenditures | | - | - | - | | - |
| Other - Events Not Anticipated | | 5 | 5 | 5 | 5 | 20 |
| | | 1,044 | 355 | 988 | 296 | 2,683 |
| **Cash flow from Operations** | | $ (360) | $ 278 | $ (448) | $ 262 | $ (268) |
| **Professional fees** | | | | | | |
| Attorney/Legal | | - | - | - | | - |
| Financial advisors | | - | - | - | | - |
| Investment banker | | - | - | - | | - |
| Accountant (Audit, 10-Q, 10-K, Tax) | | - | - | - | | - |
| Other professionals | | 22 | 7 | 7 | 7 | 44 |
| Directors Fees/Salary | | - | - | - | | - |
| | | 22 | 7 | 7 | 7 | 44 |
| **Debt Service** | | | | | | |
| Interest Expense | | - | - | - | 99 | 99 |
| DIP Closing Fee/Interest | | 111 | - | 52 | - | 162 |
| | | 111 | - | 52 | 99 | 261 |
| **Total Disbursements** | | $ 1,177 | $ 362 | $ 1,047 | $ 402 | $ 2,988 |
| **Net Cash Flow/(Usage)** | | (493) | 271 | (507) | 156 | (573) |
| **Cash Balance** | | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 |
| ***Credit Facility Balances*** | | | | | | |
| **Pre-Petition Line of Credit Balance** | | | | | | |
| Beginning Balance | | $ 2,029 | $ 1,283 | $ 649 | $ 109 | $ 2,029 |
| LOC Financing Draw (Paydown) | | (746) | (633) | (540) | (109) | (2,029) |
| **Ending Balance** | | $ 1,283 | $ 649 | $ 109 | $ - | $ - |
| **DIP Revolver** | | | | | | |
| Beginning Balance | | $ - | $ 1,277 | $ 1,639 | $ 2,686 | $ - |
| DIP Financing Draw (Paydown) | | 1,277 | 362 | 1,047 | (47) | 2,639 |
| Reserve for Professional Fees | a | - | - | - | | - |
| **Ending Balance** | | $ 1,277 | $ 1,639 | $ 2,686 | $ 2,639 | $ 2,639 |
| **DIP Facility - A** | | $ 7,578 | $ 7,578 | $ 7,578 | $ 7,578 | $ 7,578 |
| **DIP Facility - B** | | $ - | $ - | $ 5,151 | $ 5,151 | $ 5,151 |

Footnotes:
a   Amount to be determined pursuant to the final DIP credit agreement.